Shaw, C. J.
As this case comes before the court by exceptions, we have not felt it to be our duty to take notice of points not raised by the exceptions, nor relied on in the argument. The declaration, it is stated, contains two counts in trespass and one in trover. As it appears, by the statement of facts in the report, that the property was rightfully attached on mesne process, and sold conformably to law, by the consent of the parties, including the plaintiff’s intestate, it being attached as his property, on a suit against him, it is difficult to perceive how either trover or trespass would lie against either the deputy who made the attachment, or the sheriff who was responsible for the due performance of his duty. The gravamen of the complaint against the officer is, not of any tort in attaching the property, or of any negligence or illegality in selling the goods, and converting them into money, but of negligence in not paying over the money, after the suit was at an end, and the money was demandable; for which an action on the case would seem to be the proper remedy. But for the reasons already given, we have not considered these questions. Perhaps, the *109 parties preferred having a decision upon the question whether, on the evidence, any action would lie, especially when it was open to amendment, rather than raise any question as to the form of action. Whether, therefore, an action of trover or trespass could be maintained in such case, by the defendant in the original suit, after the sale of the goods, on mesne process, by his consent, and whether trover and trespass could be joined, we give no opinion.
The case then shows that Coolidge, the deputy of Mr Sheriff Sumner, the defendant’s testator, did attach on mesne process a cargo of mahogany and honey, at the suit of French, on a writ against Mansfield; that by an agreement in writing, pursuant to Rev. Sts. c. 90, <§>57 — following, in all essential particulars, St. 1822, c. 93, <§>2 — the officer sold the goods at auction, and held the proceeds in money. This sale was made by the officer, within the scope of his official authority and duty; and of course the sheriff was responsible, thus far, for the regu larity and fidelity of his doings, and also for his duty in keeping and legally disposing of the money thus received. And how was it to be disposed of ? The statute that has been cited, answers this question; “ the proceeds shall be held by the officer, subject to the attachment or attachments, and shall be disposed of in like manner as the said property would have been held and disposed of, if it had remained unsold.” We are thus referred to other provisions of law, to determine how the property itself would be disposed of; and there we find that it is to be subject to the attachment, until 30 days after the rendition of a judgment for the plaintiff, and applied to the satisfaction of the plaintiff’s execution, if delivered to the officer within that time. But if the suit terminates without a judgment for the plaintiff, or if the plaintiff does not present his execution to the officer, within 30 days after judgment in his favor, it is the duty of the officer to return the property to the defendant from whom he took it by the attachment. Blake v. Shaw, 7 Mass. 506. Harrington v. Ward, 9 Mass. 251. Cooper v. Mowry, 16 Mass. 8. This leads us to the consideration of the first point raised in the present case It was contended for the defendant, that the *110 plaintiff was bound to prove property in the goods, in her intestate, at the time of the attachment. In order to show such title, the plaintiff offered the writ of French against Mansfield, and the return of the officer thereon that he had attached the goods in question, and that they were sold on mesne process according to law; and then proceeded to show, by the record of the case, that the suit had terminated without any judgment for the plaintiff, and that she had demanded the money before the commencement of this suit. This was an apparent com píete title. The jury having found that the goods were the property of Mansfield, the plaintiff’s intestate, when they were attached, the defendant contends that the jury were wiongly instructed that the burden of proof was upon the defendant, and insists that, but for this direction, the jury would probably have found otherwise. In order to appreciate the force of this exception, it is necessary to consider the issue to be tried, and the posture of the cause to which this direction applied.
By the officer’s return, he had certified that he had attached the goods as the property of the original defendant; by attaching them, he had assumed that the original defendant had such possession, or such right of possession, that they might be attached. These were facts which, as against the original defendant, the attaching officer was estopped to deny. The officer therefore was estopped to deny that the present plaintiff had such property and right of possession, as to enable her to' reclaim the goods from the officer, when the suit on which they were attached had terminated without a judgment for the plaintiff in the original suit.
We are then asked, is this proof conclusive against the officer, and can he not defend himself in any way against this claim ? This leads to the consideration of another principle, which is this; as between the parties to the first suit, viz. the plaintiff, the defendant, and the officer, the return of the attachment, and the record showing the suit at an end, are conclusive. But this cannot bind a third person. Now, when an officer is commanded, by his precept, to attach the goods of A., if he attach the goods of B., he is liable to the latter in an *111 action of replevin or trespass. If such an action be brought, and the goods or their value be recovered against him, he must be allowed to aver and show that fact, in a suit brought against him by the original defendant. Two persons cannot be sev erally owners of the same goods at the same tipie. Showing, therefore, that B., a stranger, had a good paramount title, and that he had recovered or demanded the goods cf the officer, is a bar to a suit of the original defendant, otherwise, the officer would be answerable for the goods twice, which would be unjust. When, therefore, the title of such third person is set up, and relied upon, by way of defence, although it does disprove the title of the plaintiff, yet this is not the purpose for which it is offered. It is proof to support a distinct issue, in avoidance of the plaintiff’s claim. If the defence were to .assume the form of a plea, it would be in the nature of a plea confessing and avoiding the case made by the plaintiff. Admitting that having attached the goods as the property of the debtor, and made a return accordingly, and therefore that he could not deny that the plaintiff had a good title, as against him, yet he ought not to recover, because another person, named B., had a paramount title, and had recovered, or was entitled to recover, the goods of the officer making such de-fence. This would present a new and distinct issue, upon the property of such third person. Upon such issue, the burden of proof would be on the defendant averring it. He takes upon himself to show a paramount title in a third person, in bar of the plaintiff’s claim; and if he does not establish it, his responsibility remains fixed, to restore the property to the original debtor, from whom, he admits by his return, he took it This was the present case. The officer insisted, by way of bar, that he ought not to be responsible to Mansfield for the goods because they were the property of French. On this Issue, the court are of opinion that the jury were rightly instructed, that the burden of proof was on the defendant, and therefore that the exception to that instruction is not well founded.
Tne other objection to the plaintiff’s recovery is, that the parties, mterested in the money in the hands of Coolidge, by an *112 agreement among themselves, made an arrangement for the disposal of it, different from that which the law would make; that thereby the personal agreement of Coolidge was relied upon, and not his official and legal responsibility ; and that, by means thereof, the sheriff was discharged. The principle of law, on which the objection rests, is sound, and well sustained by authorities. The sheriff is responsible for the acts of his deputy, so far only as he acts in his official capacity, and within the scope of the authority delegated to him. If a deputy sheriff, in the execution of legal process, at the request of parties, adopts a course of proceeding not conformable to law, he may be well excused, so far as he is responsible to them, by their request; but in that particular he acts as the agent of the parties, not as the servant of the sheriff; the maxim, respondeat superior, does not apply, and the sheriff is not responsible. N. Hampshire Savings Bank v. Varnum, 1 Met. 34. Such was the case in regard to the proceeds of personal property attached on mesne process, and sold by consent of parties, prior to the St. of 1822, c. 93, because there was no law warranting such sale, and the act was not an official act. Rich v. Bell, 16 Mass. 294. But now, such a sale being, in certain cases, the officer’s duty, and the law having provided for the custody and disposition of the proceeds, his acts herein become official duties, for which the sheriff is responsible. The case above cited, 1 Met. 34, illustrates this rule, in both its aspects. There, so far as the deputy, oy the consent and direction of the parties, sold the goods at private sale, and on credit, he did not act conformably to law; he acted as the agent of the parties. But the deviation from the directions of law being as to the mode of sale, and as the proceeds, when realized, were to be held and disposed of in the manner provided by law, it was held that, for any neglect or misfeasance in making such sale, the sheriff would not be responsible ; but for a default, in not paying over the proceeds according to law, the sheriff was responsible, because it was a breach of official duty.
But we cannot perceive any facts in the present case, which bring it within this rule. Mansfield, French, and Alger, as the *113 assignee of French, entered into an agreement, by indenture, determining among themselves how the money in the hands of Coolidge should be divided between them. But to this agreement Coolidge was no party; he was not bound by it, and it did not alter or affect his obligations, in any respect. It did not substitute any personal engagement of his in place of his legal liability: The right to the money was in Mrs. Mansfield. The indenture in question contained a power from her, authorizing the officer to pay over the money to Alger; and a payment, in pursuance of that authority, would be a good acquittance. It is a stipulation, not altering the character of the liability of the officer or holder of the fund, but providing how it shall be disposed of; a provision in no way affecting the responsibility of such officer.
It was insisted with great earnestness, in the full and able argument for the defendant, that Coolidge became, in effect, party to this agreement, by assenting to it and making some payments in conformity with it. This agreement was competent evidence to show that the sums, which Coolidge had paid to Alger, he had paid by authority of the plaintiff, and that he had thereby discharged himself, and of course the sheriff, pro tanto. But he had no further concern with that indenture, than to see that it contained a power from the plaintiff, under which he might safely make payment to Alger. It was immaterial to him, what collateral stipulations the indenture contained, between the parties to it. His assent to them, or dissent from them, would be alike immaterial to his own rights and duties, or those of his principal. It did not alter or extinguish the obligation which he was under, by force of the statute, to pay over the money in his hands as a deputy sheriff. It appears to us to stand on the same footing, as if the plaintiff had given Alger a naked power of attorney to collect and receive the money of Coolidge, and the attorney had received a part of the money, under such power, leaving a balance still due. The balance must be sued for and recovered, in the same manner, by the plaintiff, as the whole would have been, had no such payment been made. We can perceive no evidence, in any part of the case, that Coolidge *114 entered into any binding obligation or promise to Alger, to pay the amount over to him, or any stipulation, upon which Alger might have maintained air action against him. It is argued that this indenture not only contained an authority and request from the plaintiff to Coolidge to pay the money to Alger, but also a positive direction to do so. But as she had no lawful right to give such authoritative direction to the officer, it imposed no obligation upon him. We think that nothing short of an express agreement between Mansfield, Alger and the officer, discharging the latter from the claim of Mansfield, and stipulating, on his part, to pay the amount in his hands to Alger, would support the defence of the sheriff on this ground; and no such agreement appears to have been made. The fact of paying part is an assent to nothing but the power which authorized Alger to receive the money for the plaintiff and give a discharge in whole or pro tanto, as the payment should be full or in part. It appears to us, therefore, that the obligation of the deputy to pay over this money, which he held as the officer of the law, to this plaintiff, remained unchanged by the indenture between other parties, and the proceedings under it; that this was a legal obligation arising from his official relation and authority ; that it imposed a duty on him, for the performance of which the sheriff, as his superior, was liable; and therefore that the plaintiff is entitled to maintain this action, for the balance left unpaid by the deputy, against the defendant, as the personal representative of the sheriff. Rev. Sts. c. 14, <§> 66.

Defendant defaulted.